IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN WHITEWAY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FEDEX KINKO'S OFFICE AND PRINT SERVICES, INC., and DOES 1 through 25, inclusive,<br><br>Defendants. | No. C 05-2320 SBA<br><br>**ORDER**<br><br>[Docket No. 59] |

This matter comes before the Court on Plaintiff's Motion for Class Certification [Docket No. 59]. The Court has considered the parties' filings and statements made at oral argument on this Motion, which was held on September 12, 2005.

## **BACKGROUND**

Plaintiff Stephen Whiteway works as a Center Manager ("CM") for a California retail location of Defendant FedEx Kinko's Office and Print Services, Inc. On May 19, 2005, Plaintiff filed a complaint against FedEx Kinko's in the Superior Court of the State of California. Plaintiff alleged that FedEx Kinko's improperly exempts CMs from certain employment benefits, particularly overtime compensation, by categorizing the group as "executive exempt."[1] Compl. at ¶ 12. Plaintiff

---

[1]The executive exemption is set out in California Labor Code section 515, which states:
> (a) The Industrial Welfare Commission may establish exemptions from the requirement that an overtime rate of compensation be paid pursuant to Sections 510 and 511 for executive, administrative, and professional employees, provided that the employee is primarily engaged in the duties that meet the test of the exemption, customarily and regularly exercises discretion and independent judgment in performing those duties, and earns a monthly salary equivalent to no less than two times the state minimum wage for full-time employment. The commission shall conduct a review of the duties that meet

1 claims that Defendant's classification of CMs as executive exempt, and failure to investigate the
2 propriety of that classification, violates California Labor Code §§ 201, 202, 203, 218.5, 226, 226.7,
3 510, 512, 1174, 1194, 1198 and 1199; and California Business & Professions Code §§ 17200-17208.
4 Plaintiff seeks injunctive relief, back pay, and punitive damages.

On June 8, 2005, Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1332. Defendant answered the complaint and filed a counterclaim for declaratory judgment on November 30, 2005.

On May 12, 2006, Plaintiff filed the instant Motion for Class Certification. The proposed class consists of "all members who are/were employed as salaried Store Managers of Kinko's, and were classified thereby as overtime-exempt employees at any time between the commencement of the pay period including May 19, 2001 and the present." Compl. at ¶ 14.

**A. Facts**

FedEx Kinko's operates about 200 Centers in California. The state is divided into two regions, Southern California and the West Area. These regions are further divided into districts, which are run by District Managers who report to the Regional Vice-President of the given region. The Southern California region has eight districts and the West Area region, which covers northern California, has six districts. Each district contains multiple centers or retail stores. The West Area region contains about eighty-eight centers and the Southern California region contains about 112-120 centers.

Each of these centers is run by a Center Manager. Each CM oversees an Assistant Manager (Retail) and Assistant Manager (Production). Along with overseeing these two hourly managers, some CMs also manage a Senior Customer Consultant and/or a Senior Technology Consultant. The

---

the test of the exemption. The commission may, based upon this review, convene a public hearing to adopt or modify regulations at that hearing pertaining to duties that meet the test of the exemption without convening wage boards. . . .

(e) For the purpose of this section, "primarily" means more than one-half of the employee's worktime.

2

Assistant Managers manage the 12 to18 entry-level employees in these centers, which include Associate Retail Consultants, Retail Consultants, Couriers, Associate Production Operators, and Production Operators. Since 2003, FedEx Kinko's has trained CMs in Dallas, Texas. The training materials used in this eight week program are uniform for each center.

FedEx Kinko's has five different types of centers: (1) Hub Centers, (2) Spoke Centers, (3) Standalone Centers, (4) Ship Centers, and (5) Commercial Processing Centers ("CPCs").

Hub Centers are 24-hour, full-service retail and commercial stores. Generally, Hubs are larger than Spokes in terms of sales volume, headcount, machine capacity and capabilities. Hub CMs are known as Senior Center Managers. They are "primarily responsible for managing the overall operations of branches within the assigned local branch network, including supervision of Branch Mangers (Spoke) ["Spoke CMs"] and the administration of branch sales performance and profitability objectives. " Cole Decl., Ex G. at 31. Along with other duties, Hub CMs hire, promote, discipline, and discharge employees at their own Hub Center as well as at the Spoke Center.

Spoke Centers are connected with a Hub branch, which oversees the Spoke Center's operations. The Hub Center coordinates with the Spoke Center for overnight customer coverage. Spokes vary by size, revenue, and number of employees.

Standalone Centers are not connected to a Hub because of their geographic remoteness. They can have a structure that is similar to either a Hub or a Spoke in terms of the commercial/retail mix, revenue, and number of employees. Standalones are generally open 24 hours, but can close during certain hours based on customer traffic and needs. Standalone CMs are "primarily responsible for managing the overall branch operation, including supervision of team members and the administration of branch sales performance and profitability objectives." Cole Decl., Ex. G at 35. The Standalone CMs' job responsibilities are similar to those of Spoke CMs.

Ship Centers are primarily shipping facilities, and are are typically smaller than other centers. CPC Centers service other FedEx Kinko's Centers, rather than the general public. CPC centers are primarily responsible for large print jobs or print jobs needing a quick turnaround.

Hub, Spoke, and Standalone CMs are required to achieve the company's sales and profit objectives, supervise employees, hire employees, train employees, evaluate workers, recommend

wage increases, recommend promotions, initiate disciplinary proceedings, terminate employees, maintain the Defendant's fiscal reporting procedures, supervise marketing initiatives, manage inventory, manage machinery, comply with Federal/State law safety requirements, and ensure subordinate employees are consistently applying Kinko's Policies and Procedures. Cole Decl. Ex G. at 31-35 (FedEx Kinko's Standard Roles & Job Descriptions: Implementation Guide February 2002). District Managers evaluate CMs' performance based on leadership skills and business results. Cole Decl., Ex. K (FedEx Kinko's Performance Appraisal for Center Managers).

## LEGAL STANDARD

### I. Class Certification

Class certification is governed by Federal Rule of Civil Procedure 23, which sets forth a two-step procedure. First, the Court must determine that the following four requirements of Rule 23(a) have been satisfied: (1) numerosity; (2) common questions of law and fact; (3) typicality; and (4) fair and adequate representation. Fed. R. Civ. P. 23(a). Once these requirements are met, the plaintiff must also show that the lawsuit qualifies for class action status under one of the criteria found in Rule 23(b). *See Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended and superceded on denial of rehearing by Zinser v. Accufix Research Institute, Inc.*, 273 F.3d 1266 (9th Cir. 2001) (noting that Plaintiff "bears the burden of demonstrating that [he] has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)").

Rule 23(b) requires that the plaintiff establish that either: (1) there is a risk of inconsistent adjudication, or adjudication of individual class member's claims would substantially impair non-party members' ability to protect their interests; (2) the defendant acted on grounds generally applicable to the class; or (3) common questions of law or fact predominate and class resolution is superior to other available methods. Fed. R. Civ. P. 23(b).

The plaintiff bears the burden of proving that certification is appropriate. *See Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001). The Court maintains great discretion in certifying a class action. *Vizena v. Union Pac. R. R. Co.*, 360 F.3d 496, 502 (5th Cir. 2004). The Court must rigorously analyze whether the class action allegations meet the requirements of Rule 23. *See General Telephone Co. Of the Southwest v. Falcon,* 457 U.S. 147, 161 (1982). However,

4

"[b]ecause the early resolution of the class certification question requires some degree of speculation . . . all that is required is that the Court form a 'reasonable judgment' on each certification requirement." *In re Citric Acid Antitrust Litig.*, 1996 WL 655791 *2 (N.D. Cal. 1996). "In formulating this judgment, the Court may properly consider both the allegations of the class action complaint and the supplemental evidentiary submissions of the parties." *Id.* at * 2. The Court may also consider how the plaintiffs' claims will be tried. *Castano v. Am. Tabacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996).

## ANALYSIS

**A.    Class Period**

California CMs sued Defendant's predecessor Kinko's in California Superior Court on March 14, 2000, for failure to pay overtime to nonexempt employees who had been misclassified as exempt employees. *See Sanders v. Kinko's*, Case No. 00CC03304. Kinko's settled this case and certified the CMs as a class for settlement purposes only. Counterclaim at ¶ 14.[2] The parties agreed at oral argument that April 18, 2002, the effective date of the *Sanders* settlement, is the cut-off date for this class.

**I.    Ascertainability**

An implied prerequisite to certification is that the class must be sufficiently definite. *See DeBremaeker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970). An identifiable class exists if its members can be ascertained by reference to objective criteria. *See id.* at 734-35 (declining to certify a class made up of Texas residents "active in the peace movement" because identification of members was dependent on their subjective states of mind). *See also Lukovsky v. City and County of San*

---

[2]The settlement class included: "All current and former employees of Defendant who worked in the position of [Center] Manager within the State of California between March 14, 1996 and the Effective Date (as defined in the Agreement)(the "Class Period")." The "Effective Date" was defined as "the date upon which the Judgement becomes Final." Counterclaim, Ex. B at 3. The Superior Court signed the Final Judgement and Order of Dismissal on April 18, 2002. Defendants request that this Court take judicial notice of the *Sanders* settlement. That request is granted. Judicial notice may be taken of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The existence of the *Sanders* settlement is not disputed by the parties, and it is readily verifiable through examination of the court file in that case.

*Francisco*, 2006 WL 140574 at *2 (Jan. 17, 2006). The Court must be able to determine class members without having to answer numerous fact-intensive questions. *Daniels v. City of New York*, 198 F.R.D. 409, 414 (S.D.N.Y. 2001).

Plaintiff plans to determine class membership by analyzing employee, payroll, and other records maintained by Defendant. Compl. at ¶ 23(a). This is a reasonable, objective method of ascertaining those individuals Defendant employed as CMs in a California retail location at any point between April 18, 2002 and the present. Accordingly, Plaintiff has satisfied the ascertainability requirement for class certification.

## II.     Federal Rule 23(a) Requirements

### A.     Numerosity

Rule 23(a)'s first requirement is that the proposed class must be so numerous that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticable" does not mean "impossible," and a plaintiff only need establish the difficulty or inconvenience of joining all members of the class to meet the numerosity requirement. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). There is no set numerical cutoff; a court must examine the specific facts of each case to determine whether numerosity has been satisfied. *General Tel. Co.*, 446 U.S. at 329-30. Moreover, a plaintiff need not allege the precise number of class members, "but may instead [make a reasonable] estimate on the basis of the size of a disputed offering." *Brosious v. Children's Place Retail Stores*, 189 F.R.D. 138, 145 (D.N.J. 1999).

Given the parameters of the proposed class, the parties agree that it will include several hundred individuals. This is sufficient to meet the numerosity requirement.[3]

### B.     Commonality

To prevail on his Motion for Class Certification, Plaintiff must establish that there are

---

[3] Although neither Rule 23(a) nor the courts have imposed an absolute "magic number," some courts have held that numerosity may be *presumed* at a level of forty members. *See, e.g., Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). On the other hand, classes of fifteen or fewer people have frequently been rejected as too small for certification. *See, e.g., General Tel. Co. v. EEOC*, 446 U.S. 318, 329-30 (1980) (fifteen affected employees "would be too small to meet the numerosity requirement"); *Harik v. Cal. Teachers Ass'n*, 298 F.3d 863, 872 (9th Cir. 2002) (certification of classes of seven, nine, and ten members vacated on numerosity grounds).

6

"questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As the Ninth Circuit stated in *Hanlon v. Chrysler Corporation*, 150 F.3d 1011, 1019 (9th Cir. 1998), the commonality requirements of Rule 23(a) are less rigorous than the companion requirements of Rule 23(b)(3). All questions of fact and law need not be common to satisfy the rule. *Id*. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class. *Id.*; *see also Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003) ("Rule 23(a)(2) has been construed permissively."). Factual variations or individual differences concerning damages, for example, will generally not defeat commonality. *See, e.g., Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) (noting that differences in individual damage calculations are insufficient to defeat commonality).

Plaintiff asserts that commonality is established because the central question in this case – whether CMs' duties and responsibilities qualify as executive exempt – will require the Court to determine what tasks CMs, as a group, perform and the amount of time they spend on non-exempt tasks. In essence, Plaintiff's argument is that because CMs have similar job descriptions, and Defendant applies the executive exemption to all CMs, the "minimal" showing necessary to establish commonality is met. *See Hanlon*, 150 F.3d at 1020. Further, Plaintiff identifies the following common questions of law:

> i. whether defendant Kinko's violated IWC Wage Orders and/or Labor Code § 510 by failing to pay overtime compensation to Store Managers who worked in excess of forty hours per week and/or eight hours per day.
> ii. whether defendant Kinko's violated Business and Professions Code § 17200 by failing to pay overtime compensation to Store Managers who worked in excess of forty hours per week and/or eight hours per day.
> iii. whether defendant Kinko's violated Labor Code § § 226.7 and/or 512 by failing to consistently provide meal and rest periods to its Store Managers.
> iv. whether defendant Kinko's violated Labor Code § 1174 by failing to keep accurate records of employees' hours of work.
> v. whether defendant Kinko's violated Labor Code § § 201-203 by failing to pay overtime wages due and owing at the time that certain Class Members' employment with Defendant terminated.
> vi. whether defendant Kinko's violated Labor Code § 226 by failing to provide the semimonthly itemized statements to Class Members of total hours worked by each and all applicable hourly rates in effect during the pay period.
> vii. whether Representative Plaintiff and the Class are entitled to "waiting time" penalties, pursuant to Labor Code § 203.

Compl. at ¶ 23.

7

The Court agrees that CMs share similar job duties and responsibilities regardless of center type. Even assuming there are some variations among the daily tasks performed by CMs, as Defendant alleges, the similarities create common questions as to whether CMs are properly classified as executive exempt.

Defendant contends that in light of *General Telephone Company v. Falcon*, 457 U.S. 147 (1982), Plaintiff's reliance on uniform employment policies for all CMs does not satisfy commonality. In *Falcon,* the plaintiff alleged that he was discriminated against on the basis of race, and sought to certify a class composed of all Mexican-Americans employed by his employer. The Supreme Court overturned the lower's court's decision to certify the class, because there was no common question of law or fact. In the Court's view, "there is a wide gap between [] an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination." *Falcon,* 457 U.S. at 157. In order to find a common question, the Court would need to infer:

> (1) that this discriminatory treatment is typical of petitioner's promotion practices, (2) that petitioner's promotion practices are motivated by a policy of ethnic discrimination that pervades petitioner's Irving division, or (3) that this policy of ethnic discrimination is reflected in petitioner's other employment practices, such as hiring, in the same way it is manifested in the promotion practices.

*Falcon,* 457 U.S. at 157-158. The *Falcon* Court rejected claimant's "across-the-board" allegation that, as a member of a racial class, his personal experience with racial discrimination automatically evidenced company-wide discrimination. Plaintiff, however, does not ask the Court to infer that Defendants' allegedly illegal actions toward him translated into a company-wide policy of illegal action for those sharing common characteristics. Rather, Plaintiff directly challenges FedEx Kinko's undisputed company-wide policy of categorizing all CMs as exempt employees.

Defendant insists that simply because CMs are subject to common policies does not mean that they have identical job duties. According to Defendant, commonality is destroyed by the fact that different CMs supervise different numbers of employees and have different business volume and mix depending on which type of center they work at. Defendant asserts that "[t]here is no single "CM" job."

As discussed, differences between Hub, Spoke, and Standalone CMs' job duties and

8

responsibilities appear to be minimal, according to FedEx Kinko's own manual. Further, commonality is not defeated simply because CMs' job duties vary to some extent. In *Wang v. Chinese Daily News,* 231 F.R.D. 602, 605, 613 (C.D. Cal. 2005), the court certified a class consisting of employees with various job descriptions, and held that

> Defendant cannot, on the one hand, argue that all reporters and account executives are exempt from overtime wages and, on the other hand, argue that the Court must inquire into the job duties of each reporter and account executive in order to determine whether that individual is "exempt." Moreover, Defendant's argument ignores the fact that Plaintiffs are challenging Defendant's *policy* of classifying all reporters and account executives as "exempt."

Defendant further argues that commonality is defeated because some, but not all, CMs signed arbitration agreements. However, Defendant stated at oral argument that nearly all CMs signed arbitration agreements, and that the agreements are substantially similar. As such, commonality is not defeated by the arbitration agreements.

Plaintiff has met his burden of establishing commonality.

**C.    Typicality**

The third requirement of Rule 23(a) is typicality. The typicality requirement focuses on the similarity between the lead plaintiff's legal theories and those of the people he or she purports to represent. *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1998). As such, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 158 n.13. However, "[t]ypicality refers to the nature of the claim . . . of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Defendant presents several arguments in support of its position that Plaintiff's claims are not typical: (1) Whiteway did not follow the "2 Assistant Manager" policy and did not receive extensive training; (2) Whiteway was a CM at a Standalone Center; (3) Whiteway was a CM from November 2001 to the present and, as such, not a CM during the entire proposed class period; (4) Whiteway lacks standing for some of the claims.

Whiteway has been a CM in a California retail location of FedEx Kinko's since November 2001. Because the alleged injury is based on a misclassification of CMs as executive exempt, he has

9

suffered the same injuries and has the same interests as other CMs that FedEx Kinko's classified as executive exempt at any point during the proposed class period. Thus, it is irrelevant whether he followed the "2 Assistant Manager" policy and did not receive extensive training, as long as his job duties were similar to those of other CMs. As discussed, the duties of Standalone CMs are substantially similar to those of other CMs, so Whiteway's position as a Standalone Center CM is also irrelevant. Whiteway does not have to have been a CM for the entire class period, as the class covers those individuals who were CMs at any time during the class period.

This Court also rejects Defendant's argument that Plaintiff lacks standing to sue on behalf of former CMs. Defendant is correct that because Plaintiff is currently employed as a CM, he cannot recover under California Labor Code sections 201 to 203, which deal with an employer's "willful [failure] to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits." However, the fact that Plaintiff is ineligible for one of several damage remedies sought does not defeat the typicality requirement. A "representative's claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Plaintiff and ex-CMs are eligible to recover under California Labor Code sections 510, 226, 226.7, and 512, as well as under California Business & Professions Code sections 17200-17208. Those statutes do not require that the employee terminate employment with the company. Further, Defendant's argument is based on a mischaracterization of the California Court of Appeals' decision in *Pfizer v. Superior Court*, 141 Cal. App. 4th 290 (2006). In *Pfizer*, the Court held that a plaintiff bringing a class action for relief under the amended California Business & Professions Code section 17204 must have "suffered injury and lost money or property" as a result of the violation of the Unfair Competition Law in order to meet the statute's requirement of standing. *Id*. at 300. *Pfizer* did not hold that the named plaintiff in a class action suit must be able to recover under every statute alleged to have been violated by the defendant.

Further, this Court is bound to follow the Supreme Court's statement that, "to have standing to sue as a class representative it is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he

10

represents." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974). The Court declines to impose additional requirements. Whiteway and ex-CMs have suffered similar injuries if misclassified as executive exempt employees during the class period. They have a similar interest in recovering overtime pay and other damages. Accordingly, the Court finds that the typicality requirement is met.

### D. Adequacy of Representation

The final requirement of Rule 23(a) is that Whiteway must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation assures due process of law to all unnamed class members; if a person is to be conclusively bound by a judgment prosecuted by a representative, he must have received adequate representation. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). To establish adequacy of representation, Whiteway must show: (1) that his interests are common with, and not antagonistic to, the classes' interests; and (2) that he is "able to prosecute the action vigorously through qualified counsel." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

Plaintiff has established adequacy of representation. There is no evidence that Whiteway has any conflicts of interest with other CMs in the class. Plaintiff's counsel has already investigated the claims of the class through depositions, discovery, and interviews. Thus, Plaintiff can adequately represent the interests of his fellow class members.

### III. Rule 23(b) Requirements

After satisfying the requirements of Rule 23(a), Whiteway must also show that at least one of the three requirements of Rule 23(b) is satisfied before the Court can certify the class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614-15 (1997). Plaintiff asserts that the Court could certify the class pursuant to any of the three requirements..

### A. Rule 23(b)(1)

Rule 23(b)(1) allows a court to certify a class when the party requesting certification meets the requirements of Rule 23(a) and either (A) if trying each case separately, would create a risk of "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class," or (B) adjudication of

11

1 individual member's claims would substantially impair or impede non-party members' ability to
2 protect their interests. Fed. R. Civ. P. 23(b)(1).

3    According to Plaintiff, the class should be certified under Rule 23(b)(1)(A), because there is
4 a risk of inconsistent results if individual CMs' claims as to the validity of their exempt status are
5 resolved separately. FedEx Kinko's has categorized CMs as a group as executive exempt, and a
6 decision about such categorization would impact each individual CM. If the Court were to order
7 Defendant to reclassify an individual as nonexempt, granting that CM overtime, meal breaks, and
8 rest breaks, then that CM would be treated differently than her fellow CMs, and FedEx Kinko's
9 would have incompatible standards of conduct toward each CM. Although there is some force to
10 this argument, the Ninth Circuit has held, as noted by Defendant, that "[c]ertification under Rule
11 23(b)(1)(A) is . . . not appropriate in an action for damages." *Zinser,* 253 F.3d at 1193. As
12 discussed below, although Plaintiff also seeks injunctive relief, this case is best characterized as
13 primarily a suit for money damages. Thus, the Court declines to certify the class pursuant to Rule
14 23(b)(1)(A).

15    Plaintiff contends that Rule 23(b)(1)(B) also applies, because class members may pursue
16 punitive damages, and there is a limited fund from which individual class members would be able to
17 recover. Punitive damage awards for individual members could deplete the corporation's resources
18 to the point where it could not satisfy judgments against it, and later plaintiffs would be unable to
19 recover. Defendant contends that Plaintiff has not brought a claim for which the Court could award
20 punitive damages. Plaintiff responds that the facts alleged in the Complaint show intentional
21 violations of law, which give rise to a claim for punitive damages. Assuming arguendo that punitive
22 damages are available, the *Zinser* court identified a test for determining whether the existence of a
23 "limited fund" justifies certification under Rule 23(b)(1)(B):

> The Supreme Court has held that certain characteristics are "presumptively necessary, and not merely sufficient, to satisfy the limited fund rationale" *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 842 (1999). Thus, to satisfy Rule 23(b)(1)(B), a class action plaintiff must demonstrate that the case involves a "'fund' with a definitely ascertained limit, all of which would be distributed to satisfy all those with liquidated claims based on a common theory of liability, by an equitable, pro rata distribution." *Id.* at 841.

12

*Zinser*, 253 F.3d at 1197. Plaintiff has not satisfied this test. He has identified no ascertainable limit on any potential fund for payment of damages, punitive or otherwise, aside from pointing out that there are due process limits on the size of punitive damage awards. In the absence of a more complete showing, the Court rejects Plaintiff's argument that the class should be certified under Rule 23(b)(1)(B).

**B.      Rule 23(b)(2)**

Rule 23(b)(2) allows a class action to be certified where Rule 23(a) is met and "the party opposing the class has acted or refused to act on grounds generally applicable to the class," making it appropriate to grant relief sought to the class as a whole. Fed. R. Civ. P. 23(b)(2). This subsection primarily applies to suits injunctive relief, but the Court can certify a class seeking money damages if "the claim for monetary damages [is] secondary to the primary claim for injunctive or declaratory relief." *Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir. 2003).

Plaintiff contends that this subsection applies, because many of the class members are current employees who would benefit from injunctive relief. Plaintiff has not shown that monetary relief is secondary to the injunctive relief sought. Thus, the Court will not certify the class under Rule 23(b)(2).

**C.      Rule 23(b)(3)**

Under Rule 23(b)(3), the Court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). The matters pertinent to a finding under Rule 23(b)(3) include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action. *Id.*

The objective behind the two requirements of Rule 23(b)(3) is the promotion of economy and efficiency in actions that primarily involve monetary damages. *See* Fed. R. Civ. P. 23(b)(3) advisory

13

committee notes. When common issues predominate, true economy may be achieved through the class action device, as time, effort and expense can be saved as compared to individual suits, and the confusion over differing outcomes can be avoided. *Id.*

The Court agrees with Plaintiff that common questions of law and fact predominate. "Because no precise test can determine whether common issues predominate, the Court must pragmatically assess the entire action and the issues involved." *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 489 (E.D. Cal. 2006). The Court can more efficiently answer the question of whether Defendant's exemption of all CMs is correct through a class action than through case-by-case adjudication.

A recently-decided case, *Tierno v. Rite Aid Corp.*, No. 05-02520 (N.D. Cal Aug. 31, 2006), lends support to the Court's holding on Rule 23(b)(3). In *Tierno*, a group of Rite Aid store managers claimed that their classification as exempt employees violates California labor laws, and moved for class certification. Judge Henderson granted the motion under Rule 23(b)(3), holding that "significant aspects" of the case could be resolved on a class basis including "the actual requirements of the job, the realistic expectations of the employer, the proper classification of Store Manager tasks as exempt or non-exempt, and Rite Aid's state of mind, knowledge, historical actions, and policies with respect to its classification and treatment of Store Managers." *Id.* at 16. *Tierno* relied on *Sav-On Drug Stores v. Superior Court*, 34 Cal. 4th 319, 336 (2004) (holding that common questions predominated in overtime case brought by chain store managers). This case presents very similar issues to *Tierno* and *Sav-On*.

Defendants argue that Plaintiff has not and cannot establish common questions of law or fact, and as such, no common questions of law or fact could predominate. That argument has been discussed and rejected. Next, Defendant contends the varying characteristics of the class would render the class unmanageable. Again, the class has similar characteristics except, perhaps, with respect to damages. While Defendant argues that this Court should not certify this case as a class action because it may have to "conduct a particularized assessment of damages for each putative class member," class certification is not defeated merely because individualized damage issues may remain. *See Smilo v. South Western Bell Mobil Systems*, 323 F.3d 32, 40 (1st Cir. 2003) ("Where . . .

common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain.").

Once liability issues have been determined, there are various methods available in a class action lawsuit that the Court may effectively use to resolve the damages issues. Plaintiff proposes dealing with liability and damages in separate stages, and calculating damages on a collective basis through questionnaires, surveys, exemplar plaintiffs, a Special Master or some other "innovative procedural tool." *See Tierno* at 18 (noting that "courts in overtime cases such as this may properly couple uniform findings on common issues regarding the proper classification of the position at issue with innovative procedural tools that can efficiently resolve individual questions regarding eligibility and damages," and identifying several such tools).

A class action is superior to multiple individual lawsuits. The needless expenditure of additional time, effort and money that would be attendant to numerous individual suits is greatly reduced, and the potential for differing outcomes is avoided as well. *See Tierno* at 19.

Whiteway has satisfied the criteria of Rule 23(a) and Rule 23(b)(3). Class certification is appropriate.

## **CONCLUSION**

Plaintiff's Motion for Class Certification is GRANTED. The Court certifies the class of current and former FedEx Kinko's CMs who were classified as exempt employees at any time between April 18, 2002, and the present. Plaintiff's counsel is directed to publish notice of the class action in a newspaper of general circulation twice weekly for two weeks within forty-five days of the Court's Order.

IT IS SO ORDERED.

Dated: 9/13/06

*Saundra B Armstrong*
Saundra Brown Armstrong
United States District Judge