**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| STEPHEN WHITEWAY, on behalf of himself and others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>FEDEX KINKO'S OFFICE AND PRINT SERVICES, INC. and DOES 1 through 25,<br><br>　　　　Defendants. | No. C 05-2320 SBA<br><br>**ORDER**<br><br>[Docket Nos. 161, 182] |

Defendant FedEx Kinko's Office and Print Services, Inc. (FedEx Kinko's) has submitted a motion for summary adjudication against representative plaintiff Stephen Whiteway, or, in the alternative, for decertification of this class action [Docket No. 161]. FedEx Kinko's also objects to the declaration of Matthew R. Bainer submitted in support of Whiteway's opposition to the motion for summary adjudication [Docket No. 182]. After reading and considering the arguments presented by the parties, the Court finds these matters appropriate for resolution without a hearing. *See* FED. R. CIV. P. 78. For the reasons that follow, the motion for summary judgment is GRANTED and the objection to the declaration is DENIED as MOOT.

## BACKGROUND

On September 13, 2006, the Court ordered class certification of "current and former FedEx Kinko's [Center Managers] who were classified as exempt employees at any time between April 18, 2002, and the present." Docket No. 89. The potential class consists of approximately 490 current and former Center Managers (CMs).

On May 19, 2005, Whiteway filed a complaint against FedEx Kinko's in the Superior Court of the State of California. Whiteway alleges that FedEx Kinko's improperly exempts CMs from certain employment benefits, particularly overtime compensation, by categorizing the group as "executive exempt." Compl. at ¶ 12. Whiteway claims that FedEx Kinko's classification of CMs as executive

exempt, and failure to investigate the propriety of that classification, violates California labor laws. On June 8, 2005, FedEx Kinko's removed the action to this Court pursuant to 28 U.S.C. §§ 1441, 1332.

FedEx Kinko's operates about 200 centers in California. The state is divided into two regions, Southern California and the West Area. These regions are further divided into districts, which are run by District Managers who report to the Regional Vice-President of the given region. The Southern California region has eight districts and the West Area region, which covers northern California, has six districts. Each district contains multiple centers or retail stores. The West Area region contains about eighty-eight centers and the Southern California region contains about 112-120 centers.

FedEx Kinko's has five different types of centers: (1) Hub Centers, (2) Spoke Centers, (3) Standalone Centers, (4) Ship Centers, and (5) Commercial Processing Centers. Hub Centers are 24-hour, full-service retail and commercial stores. Generally, Hubs are larger than Spokes in terms of sales volume, headcount, machine capacity and capabilities. Hub CMs are known as Senior Center Managers. They are "primarily responsible for managing the overall operations of branches within the assigned local branch network, including supervision of Branch Mangers (Spoke) [Spoke CMs] and the administration of branch sales performance and profitability objectives." Cole Decl., Ex G. at 31. Along with other duties, Hub CMs hire, promote, discipline, and discharge employees at their own Hub Center as well as at the Spoke Center.

Spoke Centers are connected with a Hub branch, which oversees the Spoke Center's operations. The Hub Center coordinates with the Spoke Center for overnight customer coverage. Spokes vary by size, revenue, and number of employees.

Standalone Centers are not connected to a Hub because of their geographic remoteness. They can have a structure that is similar to either a Hub or a Spoke in terms of the commercial/retail mix, revenue, and number of employees. Standalones are generally open 24 hours, but can close during certain hours based on customer traffic and needs. Standalone CMs are "primarily responsible for managing the overall branch operation, including supervision of team members and the administration of branch sales performance and profitability objectives." Cole Decl., Ex. G at 35. The Standalone

1  CMs' job responsibilities are similar to those of Spoke CMs.

2  Ship Centers are primarily shipping facilities, and are typically smaller than other centers. CPC Centers service other FedEx Kinko's Centers, rather than the general public. CPC centers are primarily responsible for large print jobs or print jobs needing a quick turnaround.

Hub, Spoke, and Standalone CMs are required to achieve the company's sales and profit objectives, supervise employees, hire employees, train employees, evaluate workers, recommend wage increases, recommend promotions, initiate disciplinary proceedings, terminate employees, maintain the FedEx Kinko's fiscal reporting procedures, supervise marketing initiatives, manage inventory, manage machinery, comply with federal and state law safety requirements, and ensure subordinate employees are consistently applying Fed Ex Kinko's Policies and Procedures. Cole Decl. Ex G. at 31-35 (FedEx Kinko's Standard Roles & Job Descriptions: Implementation Guide February 2002). District Managers evaluate CMs' performance based on leadership skills and business results. Cole Decl., Ex. K (FedEx Kinko's Performance Appraisal for Center Managers).

FedEx Kinko's contends that the employees are properly classified as exempt pursuant to the executive exemption contained in California Industrial Welfare Commission Wage Order 7-2001, and that it is therefore entitled to judgment as a matter of law that it did not violate California labor laws.

**LEGAL STANDARDS**

**1.   Summary Judgment**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The party moving for summary judgment must demonstrate that there are no genuine issues of material fact. *See Horphag v. Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). An issue is "material" if its resolution could affect

the outcome of the action. *Anderson*, 477 U.S. at 248; *Rivera*, 395 F.3d at 1146.

In responding to a properly supported summary judgment motion, the non-movant cannot merely rely on the pleadings, but must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002); *Federal Trade Comm'n v. Gill*, 265 F.3d 944, 954 (9th Cir. 2001). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004); *Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 568 (9th Cir. 2004).

**2.     California's Wage and Hour Laws and the Executive Exemption**

California law requires all employees receive overtime compensation and authorizes civil actions for the recovery of unpaid compensation. *See* CAL. LAB. CODE §§ 510, 1194. The central issue in this case is whether FedEx Kinko's CMs qualify as "executive exempt," meaning that they are exempt from overtime compensation and other benefits, such as meal and rest breaks. The California Labor Code allows exemptions

> from the requirement that an overtime rate of compensation be paid . . . for executive, administrative, and professional employees, provided that the employee is primarily engaged in the duties that meet the test of the exemption, customarily and regularly exercises discretion and independent judgment in performing those duties, and earns a monthly salary equivalent to no less than two times the state minimum wage for full-time employment.

CAL. LAB. CODE § 515.

The requirements for this statutory exemption is clarified by Wage Order 7-2001 (8 CAL. ADMIN. CODE § 11070):

> (1)     Executive Exemption[:] A person employed in an executive capacity means any employee:
>
> (a)     Whose duties and responsibilities involve the management of the enterprise in which he/she is employed or of a customarily recognized department or subdivision thereof; and

4

(b) Who customarily and regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretion and independent judgment; and

(e) Who is primarily engaged in duties which meet the test of the exemption. The activities constituting exempt work and non-exempt work shall be construed in the same manner as such items are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.102, 541.104-111, and 541.115-116. Exempt work shall include, for example, all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions. The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement.

(f) Such an employee must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. Full-time employment is defined in Labor Code Section 515(c) as 40 hours per week.

"Primarily" "as used in Section 1, Applicability, means more than one-half the employee's work time." *Id.*

In addition to the specific federal regulations referred to in the Wage Order, a court may find further guidance in construing these exemptions by looking more generally to federal law, where such is not inconsistent with state law. *See Bell v. Farmers Ins. Exchange (Bell II)*, 87 Cal. App. 4th 805, 817 (2001). For instance, under federal law, "management" is defined as:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

5

29 C.F.R. § 541.102.

The employer bears the burden of demonstrating that an employee is exempt from the wage and hour provisions of the Labor Code. *See Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 338 (2004); *Nordquist v. McGraw-Hill Broadcasting Co.*, 32 Cal. App. 4th 555, 562 (1995). "[U]nder California law, exemptions from statutory mandatory overtime provisions are narrowly construed." *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 802 (1999). To determine the applicability of an exemption, one must determine "the *realistic* requirements of the job." *Id.* (emphasis in original). This requires a court to determine, "first and foremost, how the employee actually spends his or her time." *Id.* A court should also determine if the employees' practices diverge from the employer's realistic expectations. *Id.* Further, because this is a class action involving several hundred persons, the parties may rely on statistical analyses of class-wide activities to prove their cases. *See Sav-on Drug Stores*, 34 Cal. 4th at 333 (noting that California courts have used statistical evidence to determine class-wide behavior).

**ANALYSIS**

To prove that the CMs qualify for the executive exemption, FedEx Kinko's must demonstrate that there are no genuine issues of material fact that the CMs (1) are involved in the management of a recognized unit; (2) customarily and regularly direct the work of two or more other employees; (3) have the ability to hire, fire, or promote employees, or, with regard to these matters, give recommendations that carry particular weight; (4) customarily and regularly exercise discretion and independent judgment; (5) are primarily engaged in duties which meet the test of the exemption; and (6) earn a monthly salary equivalent to at least twice the state minimum wage for full time employment. *See* 8 CAL. ADMIN. CODE § 11070(1)(A)(1).

**1.     Involvement in Management**

First, an employee is exempt as an executive only if his or her "duties and responsibilities

involve the management of the enterprise in which he/she is employed or of a customarily recognized department or subdivision thereof." 8 CAL. ADMIN. CODE § 11070(1)(A)(1)(a). Whiteway makes no argument with FedEx Kinko's centers being a recognized department or subdivision of the defendant's enterprise.

It is FedEx Kinko's position that the CMs are the only exempt employees at the centers and, as such, manage the centers and the other non-exempt employees therein. As previously noted, federal regulations define "management" as including, among other duties and responsibilities: interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees. *See* 29 C.F.R. § 541.102. FedEx Kinko's contends that as the only exempt employees at their various centers, the responsibilities of the CMs include nearly all of these listed activities.

For his part, Whiteway claims that CMs are merely participants in a managerial team. *See* Docket No. 177 at 3:14-15. He lists evidence purportedly showing that CMs' superiors handle many of their responsibilities [Docket No. 177 at 3:17-18, n.8]. Some of this testimony, however, fails to support his position;[1] some actually refutes it.[2] Whiteway further claims the evidence shows that CMs' co-workers perform many of their managerial functions. Docket No. 177 at 3:18-4:1, n.9. The fact, however, that non-exempt employees "may have performed some managerial tasks does not render the

---

[1] For instance, Whiteway states that the evidence shows that Center Managers' superiors set the prices of all retail products, citing the deposition transcript of Karen Berglas and John Gomez. Berglas stated that she did not know if CMs had any say in setting the retail pricing [*see* Docket No. 178, Ex. C at 142:16-20] and Gomez declares that CMs do help set retail prices [*see* Docket No. 178, Ex. D at 142-143].

[2] Whiteway claims that Center Managers' superiors merchandise the stores' products, again citing the depositions of Berglas and Gomez. What Berglas and Gomez actually state is that FedEx Kinko's uses third-party vendors to merchandise the centers, not that it is performed by District Managers. *See* Docket No. 178, Ex. C at 128:19-22; Ex. D at 137:14-23.

7

tasks nonexempt." *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001) (citing *Murray v. Stuckey's Inc.*, 939 F.2d 614, 619 (8th Cir. 1991) (holding irrelevant to the primary duty inquiry "whether other employees who reported to the manager were capable of performing part or even all of the manager's duties")). Indeed, delegation is itself an exempt duty. *See* 29 C.F.R. § 541.102.

CMs are the only exempt employees in the relevant FedEx Kinko's stores or "centers," a point Whiteway does not dispute. In fact, Whiteway accepted the characterization of CMs as the "captain of their ships." Docket No. 164, Ex. F (Whiteway Tr. at 64:11). Thus, even Whiteway recognizes that the duties and responsibilities of CMs involve the management of the FedEx Kinko's centers, even if CMs are not solely responsible for such management and report to District Managers who oversee several centers within a given geographic region. This is analogous to a captain of a ship, who although answerable to an admiral, is nevertheless in charge of and responsible for the ship itself. There is then no genuine dispute of material fact that the CMs are involved in the management of FedEx Kinko's centers.

**2.    Customarily and Regularly Direct the Work of Two or More other Employees**

Second, an employee is exempt only if he or she "customarily and regularly directs the work of two or more other employees." 8 CAL. ADMIN. CODE § 11070(1)(A)(1)(b). FedEx Kinko's has submitted testimony that its CMs supervise anywhere from 5 to 35 employees. Whiteway takes issue with this, suggesting that it is actually the District Managers supervising the employees. Based on both Whiteway's testimony and other summary judgment evidence, this is not convincing due to how infrequently District Managers are actually in direct contact with the centers. Whiteway testified that a District Manager may visit a FedEx Kinko's center once a quarter, and the defendant has offered testimony from several others that District Managers may come to the centers a few times a year. *See, e.g.*, Docket No. 64 (Whiteway Tr. at 78:18-23 (once a quarter); Bray Tr. at 33:18-34:7; Thompson Tr. at 17:8-22 (twice in six months); Kourvaris Tr. at 27:10-20 (once or twice a month to once every six weeks)). Therefore, as the only exempt employees regularly at the centers, it is the CMs customarily

and regularly directing the work of the non-exempt employees at the centers. As federal regulations recognize, "[w]hen an enterprise has more than one establishment, the employee in charge of each establishment may be considered in charge of a recognized subdivision of the enterprise." 29 C.F.R. § 541.103(b). This is the situation with CMs at the respective FedEx Kinko's centers. The evidence before the Court is that they are in charge of and handle the day-to-day management duties of the individual centers. The mere fact that the CMs themselves have superiors in the form of District Managers does not negate that they are in charge of the individual centers and qualify as executives exempt from overtime provisions.

One difficulty with Whiteway's argument is that it invites a kind of infinite regress problem. The District Managers themselves are supervised by Regional Vice-Presidents. The Regional Vice-Presidents presumably are accountable to persons higher up the corporate ladder, who in turn answer to another. By itself though, the fact that District Managers or Regional Vice-Presidents have superiors does not call into question their exempt status. Instead, the federal regulation provides the dividing line in this hierarchical chain. It stops at the employee in charge of a recognized subdivision of an enterprise, in this case, the employee in charge of the FedEx Kinko's centers. This is the CMs. Whiteway has not demonstrated a fact issue on the second prong of the exemption test by merely pointing out that District Managers supervise CMs.

**3.     The Ability to Hire, Fire, or Promote Employees**

Third, to qualify for the executive exemption, an employee must be someone with the "authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight." 8 CAL. ADMIN. CODE § 11070(1)(A)(1)(c). FedEx Kinko's has submitted substantial evidence that CMs have such authority. CMs unilaterally make hiring decisions upon determining that there is a need. *See* Docket No. 164 (Berglas Tr. at 89:15-90:13, 152:12-19; Gomez Tr. at 33:8-34:5 (discretion to staff branch according to needs)). While CMs may delegate some of the hiring duties,

9

1 District Managers are usually not involved, particularly when a non-management position is being 2 applied for. Berglas Tr. at 92:7-18, 93:18-23; Gomez Tr. at 34:19-35:18. CMs are expected to review 3 applications, determine whom to phone screen and/or call in for an interview. CMs are responsible for 4 conducting interviews in conjunction with their Assistant Managers, if they choose to. Upon deciding 5 that a particular applicant is promising, the CM determines the compensation within salary guidelines, 6 puts together an offer letter, and ensures that the candidate receives a background check and/or drug test. 7 *See* Docket No. 164 (Gallagher Tr. at 50:16-51:13, 52:2-15, 55:12-57:18, 59:23-60:5; Berglas Tr. at 8 93:24-94:10, 150:10-151:16). CMs can terminate employees, although they generally consult with 9 Human Resources as a precaution. They are not required to consult with their District Managers. *See* 10 Berglas Tr. at 151:20-153:9; Gallagher Tr. at 124:10-25; Gomez Tr. at 41:21-43:24. Whiteway contends 11 that managers must be "directly concerned either with the hiring or the firing." Docket No. 177 at 5:12- 12 15 (citing 29 C.F.R. § 541.106[3]) (underscoring in original). Whiteway asserts that this is somehow not 13 the case because CMs generally consult with Human Resources before making a determination to 14 terminate an employee. However, neither the state nor the federal regulations declare that the purported 15 executive must have sole authority to fire, only that the employee's suggestions and recommendations 16 must be given particular weight which the summary judgment evidence demonstrates is the case.

Whiteway has submitted evidence that it is the District Managers who are primarily responsible

---

[3] Whiteway's citation is not accurate. The relevant federal regulation (29 C.F.R. § 105) actually states the following:

> To determine whether an employee's suggestions and recommendations are given "particular weight," factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon. Generally, an executive's suggestions and recommendations must pertain to employees whom the executive customarily and regularly directs. It does not include an occasional suggestion with regard to the change in status of a co-worker. An employee's suggestions and recommendations may still be deemed to have "particular weight" even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status.

for the hiring of Assistant Managers. This does not, however, negate the evidence submitted showing that CMs have the authority to hire and fire employees within their respective centers, even if this authority excludes the hiring of Assistant Managers. Accordingly, there is no issue for a jury to determine with respect to whether CMs have the authority to hire and fire employees under their supervision.

### 4.  Customarily and Regularly Exercises Discretion and Independent Judgment

Fourth, an employee is exempt only if he or she "customarily and regularly exercises discretion and independent judgment." 8 CAL. ADMIN. CODE § 11070(1)(A)(1)(d). In contrast "[a]n exmployee whose primary duty is ordinary production work or routine, recurrent or repetitive tasks cannot qualify for exemption as an executive." 29 C.F.R. § 541.106(a). Whiteway maintains that because FedEx Kinko's has standardized policies and procedures, CMs are not exempt. Whiteway points out that the defendant has an operations manual approximately 400 pages long of step-by-step instructions and diagrams which all CMs must follow. Similar arguments that this undermines the exercise of independent judgment have been soundly rejected. *See, e.g., McAllister v. Transamerica Occidental Life Ins. Co.*, 325 F.3d 997, 1001 (8th Cir. 2003) ("Just because [plaintiff] was required to follow detailed manuals does not mean she did not exercise discretion and independent judgment"); *Haywood v. North Am. Van Lines Inc.*, 121 F.3d 1066, 1073 (7th Cir. 1997) (finding employee exercised discretion and independent judgment despite the company's established guidelines); *Donovan v. Burger King Corp.*, 675 F.2d 516, 521-22 (2d Cir. 1982) (observing that a company, "of course, seeks to limit likely mistakes in judgment by issuing detailed guidelines, but judgments must still be made"); *McLaughlin v. Nationwide Mut. Ins. Co.*, 2004 WL 1857112, at *11 (D. Or. 2004) ("virtually every employee in America . . . must follow company policies, procedures and guidelines").

Whiteway cites *Nordquist v. McGraw-Hill Broadcasting Co.*, 32 Cal. App. 4th 555, 563 (1995), for the proposition that "the employee [must] ha[ve] the power to make an independent choice free from immediate supervision . . . of real and substantial significance to the policies or general operations of

11

the business of the employer or the employer's customers." This quotation has been truncated. It further states that "[t]he decision may be in the form of a recommendation for action, subject to the final authority of a superior." *Id.* Ergo, the existence of detailed policy manuals or subjection to the authority of District Managers fails to undercut the CMs' exercise of discretion and independent judgment.

### 5.     Are Primarily Engaged in Duties Meeting Test of the Exemption

Fifth, to qualify for the executive exemption, an employee must be "primarily engaged in duties which meet the test of the exemption." 8 CAL. ADMIN. CODE § 11070(1)(A)(1)(e). In California, "'primarily' means more than one-half of the employee's worktime." CAL. LAB. CODE § 515(e). To distinguish between exempt and non-exempt work, the California regulations direct that activities should be construed as they are in Department of Labor regulations 29 C.F.R. §§ 541.102, 541.104-111, and 541.115-116. *See* 8 CAL. ADMIN. CODE § 11070(1)(A)(1)(e). The state regulations further provide:

> Exempt work shall include, for example, all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions. The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement.

8 CAL. ADMIN. CODE § 11070(1)(A)(1)(e).

The defendant has offered the testimony of several CMs describing how they perform their jobs. According to this testimony, CMs spend the majority of their time performing exempt tasks such as those set forth in the job descriptions for their positions. *See* Docket No. 164 (Aggarwal Tr. at 11:19-13:9; Freitas Tr. at 29:17-30:16; Whitaker Tr. at 73:14-74:7; Whiteway Tr. 182:2-25; Williams Tr. at 19:3-20:15). CMs are charged with exempt duties which include: human resources functions (hiring, orientation/training/development, coaching, performance reviews, discipline/terminations); planning; communications with upper management; audits; managing shipping services; managing production; customer service issues requiring managerial input; overseeing services offered and quality control;

1  overseeing sales and marketing; controlling the look and feel/layout of center; controlling inventory and
2  equipment; scheduling and delegating work; managing payroll and store performance; controlling
3  financials; and overseeing security, safety, maintenance, and cleanliness. These CMs testified that they
4  spend the majority of their time performing exempt duties. *See* Docket No. 164 (Ducuycuy-Conley Tr.
5  at 178:21-179:1; Freitas Tr. at 99:7-102:5; Whitaker Dep. at 138:19-139:9 (testifying that she spent
6  "way more than 50 per cent" of her time performing exempt duties as a CM); Dacuycuy Tr. at 77:12-
7  77:25 (testifying that he spent more than 50% of his time performing exempt duties as a CM); Szelestey
8  Tr. at 84:16-85:14 (testifying that "at least" 70% of her time is spent on exempt duties)).

9      This testimony is corroborated by a survey of over 150 similarly situated CMs across the western
10 United States, which concluded that CMs, on average, perform duties that are considered exempt 61%
11 of the time. *See* Docket No. 165 (Banks Decl. at ¶¶ 1-3, 5-6). Overall, 75% of the CMs reported
12 performing exempt duties more than 50% of the time. When including the time CMs reported
13 performing non-exempt work for exempt reasons such as training or managing performance, 97% of the
14 respondents exceeded the 50% time threshold for exempt work. Banks Decl. at ¶¶ 27-35.

15     Whiteway impugns the survey's methodology, querying why out-of-state class members were
16 used, time estimates were calculated on an annual basis, and only estimates from the last twelve months
17 were studied. First, FedEx Kinko's was prohibited from contacting potential class members in
18 California.[4] In addition, FedEx argues [Docket No. 161 at 9-16, n.20], and Whiteway does not
19 effectively rebut, that there is no operational/functional difference between the centers in California and
20 the centers in other western states surveyed. *See* Docket No. 167 (Cooper Decl. at ¶¶ 3-5). Next,
21 Whiteway is incorrect in saying the time estimates were calculated on an annual basis: they were
22 calculated by asking participants to provide data for a typical workweek looking across the last 12
23 months. *See* Docket No. 178 (Bainer Decl., Ex. NN); Docket No. 165 (Banks Decl. at ¶ 13). Finally,
24 the results and comments of the participants in the pilot study indicated that the most accurate

---

26 [4]   Once a class has been certified, defense counsel may not contact potential members of the class. *See, e.g., Tedesco v. Mishkin*, 629 F. Supp. 1474, 1483-84 (S.D.N.Y. 1986); *Bower v. Bunker Hill Co.*, 689 F. Supp. 1032, 1033-34 (E.D. Wash. 1985).

13

assessment of time worked at particular duties would focus on duties performed in the past year. *See* Docket No. 165 at (Banks Decl. at ¶ 16).

Moreover, the plaintiff has previously represented to the Court in its motion for class certification that:

> After numerous depositions of Defendant's District Managers, Vice Presidents, Human Resources representatives, class members, analysis of boxes upon boxes of produced documentation, a review of scores of class member declarations, and submission of the respective parties' comprehensive legal briefs, there remains ***no evidence***, that, despite variances in time spent on particular tasks, the job <u>duties/responsibilities</u> of any Center Manager (CM or "class member") are any different than another.

Docket No. 76, at 1 (emphasis and underscoring in original).

The plaintiff has further stated that "the ***task list*** shared by all CM[s] is the same" and that "individual variations" "are not really" significant. *Id*. at 6 (emphasis in original). The plaintiff has in fact asserted that "what one CM does, they all do." *Id*. at 8. To the extent any insignificant individual variations exist between CMs, the plaintiff has declared these easily addressed "through the application of surveys, questionnaires, sampling or other 'innovative tools.'" *Id*. at 6. It is therefore difficult for the plaintiff to now posit that there is an evidentiary issue on whether the job duties and responsibilities of CMs require individualized determinations, and that such determinations may not be based in part upon surveys, questionnaires, or sampling. *Cf. Sav-on Drug Stores*, 34 Cal. 4th at 333 (noting that California courts have used statistical evidence to determine class-wide behavior and that the use of statistics in an overtime class action does offer a method of proof).

It is further significant that CMs are evaluated on their performance of managerial duties. The performance appraisal of CMs focuses on four areas: "thought leadership," "people leadership," "results leadership," and "self leadership." *See* Docket No. 166 (Brightman Decl. at ¶ 13, Ex. D). A CM is judged on whether he "[p]robes and looks past symptoms to determine the underlying causes of problems and issues," "[a]dvances problems toward resolution . . . ," "[c]hooses the best alternative based on consideration of pro, cons, tradeoffs, timing, and available resources." *Id.* A CM is expected to "[d]rive[] organizational change while maintaining operating effectiveness," "prepare[] realistic

1 timeline & resource estimates (e.g. budget, headcount) needed to achieve team/group objectives," "[c]onvey[] clear expectations and hold[] people accountable," and "[m]ake[] prudent decisions regarding significant expenditure/investments." *Id.* The only other criterion for CM appraisal is various business metrics, *i.e.*, measurements of business and financial goals at the centers for which the CM is responsible. The performance evaluation makes it clear that CMs are responsible for driving overall store sales and profitability by managing payroll and decreasing expenses, setting business goals and making decisions that enable achievement of those goals. These activities are clearly managerial duties requiring the exercise of discretion and independent judgment. The fact that FedEx Kinko's evaluates CMs on these skills demonstrates that the CMs are actually expected to have them. Conversely, Whiteway does not attempt to argue that CMs' job description or performance evaluations include non-exempt tasks. Whiteway acknowledges that the employer's expectation must be taken into account when considering the satisfaction of this requirements. *See Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 802 (1999). The testimony of CMs and Dr. Banks's study both show that the vast majority of CMs were in compliance with FedEx Kinko's expectations.

The final point that needs to be made in the present discussion of whether an employee is primarily engaged in duties meeting the test of the exemption is that employees like Whiteway who were given jobs exempt in nature, cannot build a claim for overtime by failure to perform those jobs correctly. *See, e.g., Ramirez*, 20 Cal. 4th at 802 (court should consider not only how the employee actually spends his time, but also whether the employee's practice diverges from the employer's realistic expectations in determining the employer's responsibility for overtime hours). If Whiteway is correct in asserting that he spent large amounts of time doing non-exempt work, he did so in contravention of FedEx Kinko's policy. Thus, the summary judgment evidence shows that CMs are primarily engaged in duties which meet the test of the exemption.

**6.     Monthly Salary at least Twice the State Minimum Wage**

Sixth, an employee is exempt only if he or she "earn[s] a monthly salary equivalent to no less

than two (2) times the state minimum wage for full-time employment." 8 CAL. ADMIN. CODE § 11070(1)(A)(1)(f). FedEx Kinko's has provided evidence satisfying this element: CMs' salaries range from $50,000 to $100,000. *See* Docket No. 166 (Brightman Decl. at ¶ 11). The plaintiff's only dispute with this, asserted in a footnote, is that the defendant is required to prove the exemption on a workweek by workweek basis, citing *Dunbar v. Albertson's, Inc*., 141 Cal. App. 4th 1422, 1427-28 (2006).

The CM position is a salaried one. Whiteway has made no suggestion nor provided any evidence that the salary of CMs is dispersed unevenly, such that there is any given workweek that a CM is paid less than two times the state minimum wage, or that there are workweeks that a CM works enough hours that their compensation would not meet the two times minimum test. Thus, there is nothing in the summary judgment record showing a factual dispute with regard to the sixth and final sub-part of the California regulations.

Accordingly, the summary judgment record, viewed in the light most favorable to Whiteway, shows that the Center Managers qualify for the executive exemption contained in Wage Order 7-2001. Whiteway has stated four causes of action in his complaint, all based on the factual predicate that CMs were improperly classified as exempt employees. As the executive exemption serves as an affirmative defense to all of Whiteway's claims for relief, judgment as a matter of law in favor of the defendant is warranted.

## CONCLUSION

Accordingly, FedEx Kinko's motion for summary adjudication [Docket No. 161] is GRANTED. FedEx Kinko's objections [Docket No. 182] to the Declaration of Matthew R. Bainer are DENIED as MOOT.

IT IS SO ORDERED.

August 16, 2007

*Saundra B Armstrong*
Saundra Brown Armstrong
United States District Judge